```
                                              USDC SDNY
                                              DOCUMENT
                                              ELECTRONICALLY FILED
UNITED STATES DISTRICT COURT                  DOC #: _____
SOUTHERN DISTRICT OF NEW YORK                 DATE FILED: May 18, 2015
```

------------------------------------------------------------X
NATIONAL CREDIT UNION                              :
ADMINISTRATION BOARD, as Liquidating                :
Agent of U.S. Central Federal Credit Union,         :
Western Corporate Federal Credit Union,              :
Members United Corporate Federal Credit              :
Union, Southwest Corporate Federal Credit            :
Union, and Constitution Corporate Federal            :
Credit Union, in its own right, and on behalf of     :
NCUA GUARANTEED NOTES TRUST 2010-                    :
R1, NCUA GUARANTEED NOTES TRUST                      :
2010-R2, NCUA GUARANTEED NOTES                       :
TRUST 2010-R3, NCUA GUARANTEED                       :
NOTES TRUST 2011-R1, NCUA                            :          14-cv-9928 (KBF)
GUARANTEED NOTES TRUST 2011-R2,                      :
NCUA GUARANTEED NOTES TRUST 2011-       X
R3, NCUA GUARANTEED NOTES TRUST                      :          OPINION & ORDER
2011-R4, NCUA GUARANTEED NOTES                       :
TRUST 2011-R5, NCUA GUARANTEED                       :
NOTES TRUST 2011-R6, NCUA                            :
GUARANTEED NOTES TRUST 2011-M1,                      :
                                                     :
                    Plaintiffs,                      :
                                                     :
              -v-                                    :
                                                     :
U.S. BANK NATIONAL ASSOCIATION and                   :
BANK OF AMERICA, NA,                                 :
                                                     :
                    Defendants.                      :
------------------------------------------------------------X

KATHERINE B. FORREST, District Judge:

   This is principally a breach of contract and tort action brought by the

National Credit Union Administration Board ("NCUA" or the "NCUA Board") on its

own behalf, as liquidating agent of five failed corporate credit unions—the U.S.

Central Federal Credit Union, Western Corporate Credit Union, Members United

Corporate Federal Credit Union, Southwest Corporate Federal Credit Union, and Constitution Corporate Federal Credit Union (referred to together as the "Corporate Credit Unions" or "CCUs")—and on behalf of several NGN trusts (as described below).  NCUA has sued defendants U.S. Bank National Association and Bank of America, NA, in their roles as trustees for 82 trusts that issued residential mortgage-backed securities ("RMBS").  (Amended Complaint ("Am. Compl.") ¶ 2, ECF No. 46.)  The CCUs purchased certificates in the trusts at an original face value of approximately $5.3 billion.  (Id. ¶ 3.)  NCUA alleges that that the trustees breached various contractual, statutory, and common law duties with regard to those trusts.  (Id. ¶ 1.)

Before this Court is defendants' motion to dismiss.  (ECF No. 59.) Defendants' motion rests principally on an assertion that NCUA has relinquished any standing it had in its capacity as the liquidating agent of the CCUs when it re-securitized most of the CCUs' RMBS certificates as part of the NCUA Guaranteed Note ("NGN") Program.  According to defendants, NCUA placed assets that are at issue in this lawsuit into NGN trusts ("NGN Trusts"), and, in so doing, transferred the assets to separate legal entities, thereby eliminating any standing NCUA may have previously had.

This Court agrees that—as currently pled—the Amended Complaint contains insufficient allegations to support NCUA's standing to pursue any of the claims it has asserted as to the certificates in 74 of the 82 RMBS trusts.  Defendants' motion is therefore GRANTED as to those certificates on that basis.  Defendants also argue

that plaintiffs' statutory and tort claims should be dismissed. The Court declines to resolve the remaining issues at this time, as it will provide plaintiffs with a single opportunity to replead.[1]

I.   STANDARD OF REVIEW

Standing is a jurisdictional question properly raised in a motion pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 88 n.6 (2d Cir. 2006). "[W]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." Tandon v. Captain's Cove Marina of Bridgeport, Inc., 752 F.3d 239, 243 (2d Cir. 2014) (quoting APWU v. Potter, 343 F.3d 619, 627 (2d Cir. 2003)) (internal quotation marks omitted).

II.   FACTUAL BACKGROUND

The following facts are taken from the Amended Complaint and assumed to be true for purposes of this motion.

A.   Creation of the NGN Trusts

In 2009 and 2010, the CCUs failed. (See Am. Compl. ¶ 25.) NCUA took them into conservatorship pursuant to statutory authorization granted by the Federal Credit Union Act, 12 U.S.C. § 1786(h). (Id.) By October 2010, NCUA had placed all of the CCUs into involuntary liquidation pursuant to 12 U.S.C. §§ 1766(a) and 1787(a)(1)(A) and became their statutory liquidating agent. (Id.) In such capacity,

---

[1] If plaintiffs decide to replead within the timeframe set forth at the end of this Opinion & Order, defendants may seek to renew their substantive arguments pursuant to Rule 12(c).

NCUA was statutorily entitled to exercise "all rights, titles, powers, and privileges" of the CCUs.  (Id. ¶ 26.)  This included all rights and claims the CCUs may have had as certificateholders of the RMBS certificates at issue in this lawsuit.  (Id.)

Thereafter, NCUA transferred the certificates in 74 of the 82 RMBS trusts to the NGN Trusts.  (See id. ¶¶ 27-28.)  The NGN Trusts then issued approximately $28.3 billion of NGNs (notes), backed by the cash flows from the certificates (and other re-securitized assets).  (Id. ¶ 27.)  This was, in substance, a re-securitization of the RMBS certificates.  The timely repayment of principal and interest to investors in the NGN Trusts is guaranteed by NCUA and backed by the full faith and credit of the United States.  (Id.)

Each of the NGN Trusts is a Delaware statutory trust and exists as an independent legal entity, and each NGN Trust has entered into an Indenture with an indenture trustee.  (Id. ¶¶ 32-41.)  Each Indenture is alleged to provide holders of its notes with cash flows from the CCUs' re-securitized holdings, including the RMBS certificates.  NCUA appointed Bank of New York Mellon ("BNY Mellon") as indenture trustee for each of the NGN Trusts.  (See id.)  NCUA alleges that it has maintained "certain certificates" (the "Owner Trust Certificates") in each of the NGN Trusts, entitling it to payments from the NGN Trusts if there are remaining funds after a number of other payments have been made.  (Id. ¶ 29.)

The NCUA Board notified investors in the NGN Trusts that it was pursuing legal claims in connection with the securities underlying the NGN Trusts and that

4

"any recovery on those claims would benefit the NCUA Board as Liquidating Agent for the CCUs . . . exclusively." (Id. ¶ 30.)

The NCUA Board asserts that it brings this action "in its own right as the duly-appointed liquidating agent for each of the CCUs" with respect to the certificates that were not re-securitized and "in the right of, and on behalf of, the NGN Trusts with respect to" the certificates (in 74 trusts) that were re-securitized. (Id. ¶ 31.) The NCUA Board also asserts that it "brings the claims on behalf of the NGN Trusts as the holder of the NGN Owner Trust Certificates, as an express third-party beneficiary of the NGN Trust Indentures, and pursuant to its authority under 12 U.S.C. § 1787." (Id. ¶ 43.)

B.   The PSAs

Each of the certificates initially owned by the CCUs was issued pursuant to a Pooling and Servicing Agreement ("PSA"). (Am. Compl. ¶ 70.) NCUA alleges that the PSAs that govern the 82 trusts which issued the RMBS certificates are "substantially similar, and impose the same duties on Defendants." (Id.)

Each PSA provides that the trustee has certain duties and responsibilities including, inter alia, to take title to the mortgage loans conveyed to the 82 trusts, to provide notice of incomplete or defective mortgage files, and to provide notice of breaches. The trustee's duties are limited to those set forth in the PSAs. (See Declaration of Jacob S. Kreilkamp in Support of Defendants' Joint Motion to Dismiss ("Kreilkamp Decl.") Ex. 3 (WAMU 2006-AR15) § 8.01(a), ECF No. 61; accord Am. Compl. Ex. B (MABS 2006-WMC4) § 8.01.) In addition, each PSA provides that none of the powers conferred on the trustee implies a duty to exercise

5

those powers, absent an instruction to act—and an appropriate indemnity—from certificateholders.  (See Kreilkamp Decl. Ex. 4 (MSM 2006-8AR) § 6.02(vii); accord Am. Compl. Ex. B (MABS 2006-WMC4) § 8.02(a)(iii).)

The PSAs also provide that the trustee does not have any obligation to make any investigation "unless requested in writing to do so by the Holders" of a specified percentage of the trust.  (See Kreilkamp Decl. Ex. 4 (MSM 2006-8AR) § 6.02(iv); accord Am. Compl. Ex. B (MABS 2006-WMC4) § 8.02(a)(v) (trustee has no duty to investigate "unless requested in writing to do so by the NIMS Insurer or the Holders of Certificates entitled to at least 25% of the Voting Rights . . .").)  The trustee is also entitled to rely upon the certifications of compliance provided by the servicer.  (See Kreilkamp Decl. Ex. 4 (MSM 2006-8AR) § 6.01(c)(iv) ("none of the provisions contained in this Agreement shall . . . require the Trustee . . . to perform, or be responsible for the manner of performance of, any of the obligations of the Master Servicer under this Agreement"); id. § 6.01(b) ("neither the Trustee nor the Securities Administrator shall be responsible for the accuracy or content of any such resolution, certificate, statement, opinion, report, document, order or other instrument furnished by the Master Servicer or any Servicer to the Trustee or the Securities Administrator pursuant to this Agreement"); accord Am. Compl. Ex. B (MABS 2006-WMC4) § 8.01 (trustee not responsible for statements, documents, certificates of master servicer); id. § 8.02(a)(i) & (v) (trustee may rely on servicer's certificates and other statements and has no duty to investigate accuracy of the same).)

The PSAs also provide that the trustee has specific duties in an "Event of Default." An "Event of Default" requires (1) a breach of a representation, warranty or covenant of the servicer or master servicer; (2) notice to certain defined parties; and (3) a cure period. (See Kreilkamp Decl. Ex. 4 (MSM 2006-8AR) § 6.14(a)(ii); accord Am. Compl. Ex. B (MABS 2006-WMC4) §§ 7.01(a)(ii) (servicer); id. § 7.01(b)(ii) (master servicer).) Each PSA also provides that the trustee is not charged with notice of an Event of Default unless the trustee has actual knowledge or has been provided with written notice of such. (See Kreilkamp Decl. Ex. 4 (MSM 2006-8AR) § 6.01(c)(ii); accord Am. Compl. Ex. B (MABS 2006-WMC4) § 8.01(iv).)[2]

III.  NCUA'S STANDING

NCUA claims that the defendant trustees have violated various contractual, statutory, and common law obligations they have pursuant to the PSAs. The standing question before this Court pertains to whether NCUA has standing to assert claims as to the PSAs on behalf of itself, the CCUs for which it was the liquidating agent, or the NGN Trusts, which—subsequent to the re-securitization—hold most of the certificates at issue in this action. Ultimately, then, in order to have standing in this action, NCUA must be able to sue for a breach of the PSAs. As pled, it has no such authority as to the PSAs governing 74 of the 82 trusts at issue in this action.

---

[2] Plaintiffs have not provided the Court with copies of the NGN/BNY Indentures. Those Indentures are relevant to the issues raised on this motion and should be included as part of any proposed amendment.

7

NCUA argues that can bring this action "on behalf of" the NGN Trusts—which hold the re-securitized RMBS certificates—for three different reasons.  First, NCUA asserts that it has a statutory right to sue on behalf of the NGN Trusts pursuant to 12 U.S.C. § 1787.  Second, NCUA contends that it can sue on behalf of the NGN Trusts as a third-party beneficiary of the NGN Trust Indentures.  Finally, NCUA contends that it can sue derivatively on behalf of the NGN Trusts.  None of these arguments has merit.

The core standing issue on this motion is whether and to what extent NCUA's broad powers as conservator or liquidating agent of the CCUs survived after NCUA placed the CCUs' assets (certificates in 74 of the 82 trusts) into new, independent trusts.  In short, did NCUA divest itself of whatever standing it had as to those RMBS certificates when it placed those assets into the NGN Trusts?  Or did NCUA's statutory authority to act on behalf of the CCUs to commence the suit here survive that act?  There are both factual and legal aspects to this question.

The Amended Complaint itself does not contain allegations which answer this question.  It may be that, at the time NCUA—acting as conservator or liquidating agent—transferred assets to the NGN Trusts, it specifically retained certain rights and powers, including the right to assert claims on behalf of those trusts.  If such facts exist, they should be pled.  In the absence of such facts, the Court is left with the fact that the NGN Trusts are Delaware statutory trusts, which are separate legal entities with their own indenture trustee.  (See Am.

Compl. ¶¶ 32-41.)  These trusts are statutorily empowered to sue and be sued in their own right.  See Delaware Statutory Trust Act, Del. Code tit. 12, § 3804(a).

NCUA's argument that 12 U.S.C. § 1787 empowers it to sue on behalf of the NGN Trusts as a matter of law is meritless.  The statute provides for broad powers for NCUA when it is acting as liquidating agent or conservator.  NCUA has a number of general powers with regard to bankrupt or insolvent credit unions, including acting in all respects as the successor to such credit unions.  12 U.S.C. § 1787(b)(2)(A).  It succeeds to "all rights, titles, powers, and privileges of the credit union, and of any member, accountholder, officer, or director of such credit union with respect to the credit union and the assets of the credit union." Id. § 1787(b)(2)(A)(i).  It may also "place the credit union in liquidation and proceed to realize upon the assets of the credit union."  Id. § 1787(b)(2)(E).  As liquidating agent or conservator, NCUA also has certain "incidental powers," including the right and ability to "take any action authorized by this chapter, which the Board determines is in the best interests of the credit union, its account holders, or the Board."  Id. § 1787(b)(2)(J)(ii).  However, the statute does not provide for an automatic retention of these broad powers following liquidation of the CCU's assets.[3]  In particular, nothing in § 1787 authorizes NCUA (or the CCU for which it acts as liquidating agent) to sue on behalf of separate statutory trusts created to re-securitize the CCU's assets.

---

[3] The Court notes that the statute does provide for rights to repudiate certain financial contracts. Those provisions were not exercised so far as the Court is aware and do not appear to be an issue on this motion.

NCUA's assertion that it has third-party beneficiary standing is likewise without merit.  NCUA does have a direct interest in the NGN Trusts as a holder of NGN Owner Certificates and as a guarantor of the Trusts' obligations.  As a matter of logic, then, it is certainly true that any inability of the NGN Trusts to meet their obligations causes expense to NCUA.  However, being a certificateholder in the NGN trusts and a guarantor of an obligation issued pursuant to NGN Trust Indentures—even when backed by the full faith and credit of the United States— does not create third-party beneficiary status <u>in the PSAs</u>.

To explain further:  According to NCUA, if the NGN Trusts have the right to commence suit against the defendant trustees for breaches of the PSAs (and related claims), then so too does NCUA as a third-party beneficiary of the NGN Trust Indentures.  This argument goes too far.  NCUA may well be a third-party beneficiary of the NGN Trust Indentures (though the Indentures have not been provided).  In turn, the NGN Trusts—which are separate legal entities—may be third-party beneficiaries of the PSAs for the 74 RMBS trusts.  Even if these premises are true, however, NCUA is twice removed from the PSAs.  NCUA is not itself a certificateholder in any of the 74 trusts; it holds certificates in the NGN Trusts, which in turn hold certificates in the RMBS trusts.  The provisions of the PSAs themselves do not allow for third-party beneficiary status to extend beyond <u>direct</u> certificateholders.  (<u>See, e.g.</u>, Kreilkamp Decl. Ex. 4 (MSM 2006-8AR) § 11.11 ("Nothing in this Agreement or in the Certificates, express or implied, shall give to any Person, other than the parties to this Agreement and their successors

hereunder and the Holders of the Certificates, any benefit or any legal or equitable right, power, remedy or claim under this Agreement[.]").) In other words, it appears that the buck stops with the NGN Trusts.

Finally, the allegations in the Amended Complaint fail to state a derivative claim on behalf of the NGN Trusts. To start, paragraph 30 of the Amended Complaint makes it clear that NCUA is seeking recovery for itself, in its capacity as liquidating agent for the CCUs—and not for the NGN Trusts. (See Am. Compl. ¶ 30 ("The NCUA Board notified investors that it was actively investigating and pursuing certain legal claims in connection with the securities underlying the NGNs and any recovery on those claims would benefit the NCUA Board as Liquidating Agent for the CCUs . . . exclusively.").)[4] NCUA cannot purport to sue on behalf of a trust and, at the same time, seek to keep any recovery for itself; if NCUA were in fact acting in a derivative capacity—and if it could—for the NGN Trusts, any recovery would necessarily go to those Trusts. See, e.g., Del. Code tit. 12, § 3816(a) ("A beneficial owner may bring an action . . . in the right of a statutory trust to recover a judgment in its favor. . . ."); Tooley v. Donaldson, Lufkin & Jenrette, Inc., 845 A.2d 1031, 1036 (Del. 2004) ("Because a derivative suit is being brought on behalf of the corporation, the recovery, if any, must go to the corporation.").[5]

---

[4] NCUA argues in its opposition that defendants "misinterpreted" paragraph 30 and that any recovery from this action will in fact go to the NGN Trusts. However, paragraph 30 is clear that "any recovery" on the claims in this action would benefit NCUA "exclusively." NCUA may not use its "opposition to a dispositive motion as a means to amend the complaint." Shah v. Helen Hayes Hosp., 252 F. App'x 364, 366 (2d Cir. 2007) (summary order) (citation omitted).

[5] NCUA's attempt to sue derivatively on behalf of the NGN Trusts but to keep any recovery is particularly troubling because NCUA's interest in the NGN Trusts is remote: any payment that it stands to receive from the NGN Trusts is made only after the Trusts have paid others in full. (See Am. Compl. ¶ 29 ("[T]he NCUA Board is entitled to payments from the NGN Trusts after the

In any event, even if NCUA adequately pled that any recovery would go to the NGN Trusts, it has not satisfied the pleading requirements of Rule 23.1 of the Federal Rules of Civil Procedure.[6] To proceed derivatively, NCUA must show either that (1) it made a demand on persons with authority to sue and the demand was refused, or that (2) it did not make a demand because doing so would have been futile. See In re SAIC Inc. Derivative Litig., 948 F. Supp. 2d 366, 376 (S.D.N.Y. 2013) ("Delaware provides that '[a] shareholder's right to bring a derivative action does not arise until he has made a demand on the board of directors to institute such an action directly, such demand has been wrongfully refused, or until the shareholder has demonstrated, with particularity, the reasons why pre-suit demand would be futile.'" (citation omitted)), aff'd sub nom., Welch v. Havenstein, 553 F. App'x 54 (2d Cir. 2014) (summary order). Rule 23.1 requires NCUA to "state with particularity" its efforts to obtain the desired action from persons with authority and "the reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1(b)(3); Halebian v. Berv, 590 F.3d 195, 204 (2d Cir. 2009). It has failed to do so.

In paragraphs 51 to 55 of the Amended Complaint, NCUA assert that BNY Mellon, as indenture trustee for the NGN Trusts, is conflicted as it is being sued

---

principal balance of the senior notes issued by the various NGN Trusts has been reduced to zero; all accrued and unpaid interest on the senior notes has been paid; all amounts owed to the Guarantor have been reimbursed; and the Indenture Trustee, in all of its related capacities, the Administrator and the Owner Trustee have been paid in full.").)

[6] NCUA's argument that Rule 23.1 does not apply to trusts is without merit. Rule 23.1 states that it covers "shareholders or members of a corporation or an unincorporated association." Fed. R. Civ. P. 23.1(a). In turn, Delaware law—which governs the NGN Trusts—classifies statutory trusts as "unincorporated associations." Del. Code tit. 12, § 3801(g).

elsewhere for conduct similar to that alleged here.  (See Am. Compl. ¶¶ 51-55.) However, the fact that BNY Mellon is itself a party to litigation similar to that here does not excuse demand.  There is no necessary reason why BNY Mellon acting in its fiduciary capacity as trustee would affirmatively choose to take (or not take) an action based solely on its own corporate self-interest.  Notably, NCUA itself selected BNY Mellon to act as trustee for the NGN Trusts in 2010 and 2011.  (See Am. Compl. ¶¶ 32-41.)[7]

IV.   CONCLUSION

For the reasons set forth above, defendants' motion to dismiss is GRANTED as to the certificates that were re-securitized as part of the NGN Program.

---

[7] While the Amended Complaint asserts futility only, NCUA's opposition states that NCUA made a demand on BNY Mellon and that BNY Mellon declined to bring this suit and informed NCUA that it could do so.  However, even if this allegation were included in the Amended Complaint, it would not cure the Rule 23.1 pleading deficiency.  Once a demand is made, the trustee's decision not to pursue litigation is "shielded by the business judgment rule unless the shareholder plaintiff can carry the considerable burden of showing that the decision not to bring the lawsuit was made in bad faith or was based on an unreasonable investigation." RCM Sec. Fund, Inc. v. Stanton, 928 F.2d 1318, 1328 (2d Cir. 1991) (citations omitted).  To meet the requirements of Rule 23.1, NCUA must "allege with particularity 'legally sufficient reasons to call into question the validity of [BNY Mellon's] exercise of business judgment.'" Levner v. Saud, 903 F. Supp. 452, 457 (S.D.N.Y. 1994) (citation omitted), aff'd sub nom., Levner v. Prince Alwaleed, 61 F.3d 8 (2d Cir. 1995).  Here, NCUA has not pled any facts that BNY Mellon's decision not to bring suit was made in bad faith or was based on an unreasonable investigation.  See Spiegel v. Buntrock, 571 A.2d 767, 777 (Del. 1990) ("[W]hen a board refuses a demand, the only issues to be examined are the good faith and reasonableness of its investigation."). NCUA's arguments as to BNY Mellon's purported conflicts of interest and lack of independence are inapposite because by making a demand, NCUA has, as a matter of law, conceded BNY Mellon's independence.  See id. ("By electing to make a demand, a shareholder plaintiff tacitly concedes the independence of a majority of the board to respond."); In re Merrill Lynch & Co., Inc., Sec., Derivative & ERISA Litig., 773 F. Supp. 2d 330, 346 (S.D.N.Y. 2011) ("It is well-established that 'where a shareholder instead chooses to make a demand upon a board of directors, she concedes the independence of a majority of the board.'  Accordingly, there is no merit to the allegation that the BofA Board's refusal was wrongful because its members were not independent." (citation omitted)), aff'd sub nom., Lambrecht v. O'Neal, 504 F. App'x 23 (2d Cir. 2012) (summary order).  Notably, NCUA's new allegation that a demand was made also undercuts its allegations as to futility.  See Spiegel, 571 A.2d at 775 ("A shareholder who makes a demand can no longer argue that demand is excused." (citation omitted)).

Plaintiffs shall notify the Court within **7 days** from the date of this Opinion & Order whether they will seek to amend. Should plaintiffs seek to amend, they must file any proposed amendment—along with a motion pursuant to Rule 15 of the Federal Rules of Civil Procedure—within **14 days** thereafter. To allow for careful review of those allegations necessary to state a claim, any proposed Second Amended Complaint shall be not more than **75 pages** in length. (Additional background materials may be in an appendix.)

The Clerk of Court is directed to terminate the motion at ECF No. 59.

SO ORDERED.

Dated:     New York, New York
           May 18, 2015

_____
KATHERINE B. FORREST
United States District Judge